**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| JEREMY JOSEPH STROHMEYER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 3:14-cv-661-RCJ-WGC |
| K. BELANGER et al., | ) | **SCREENING ORDER** |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has submitted an amended civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*, a motion requesting leave to file a new application to proceed *in forma pauperis*, and a motion for leave to file an amended complaint. (ECF No. 4, 5, 7, 7-1). The Court now screens Plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A.

**I.    *IN FORMA PAUPERIS* APPLICATION**[1]

Before the Court is Plaintiff's application to proceed *in forma pauperis*.  (ECF No. 5). Based on the information regarding Plaintiff's financial status, the Court finds that Plaintiff is not able to pay an initial installment payment toward the full filing fee pursuant to 28 U.S.C. § 1915.  Plaintiff will, however, be required to make monthly payments toward the full $350.00 filing fee when he has funds available.

**II.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner

---

[1] The Court grants Plaintiff's motion requesting leave to file a new application to proceed *in forma pauperis* (ECF No. 4).  The operative application to proceed *in forma pauperis* is located at ECF No. 5.

seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers.

*See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

### III.  SCREENING OF AMENDED COMPLAINT[2]

In the amended complaint, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at Lovelock Correctional Center ("LCC"), Ely State Prison ("ESP"), and High Desert State Prison ("HDSP"). (ECF No. 7-1 at 1). Plaintiff sues Defendants K. Belanger, Correctional Officer Bequefuth, Board of Prisons, Inmate Michael Bobadilla, Sgt. David Carpenter, Tara Carpenter, Correctional Officer C. Cartier, Catherine Cortez Masto, Dwayne Deal, S.L. Foster, Correctional Officer James Fox, Starlin Gentry, M.

---

[2] The Court grants Plaintiff's motion for leave to file an amended complaint (ECF No. 7). The Court now screens the amended complaint (ECF No. 7-1).

Gilder, Donna Jenkins, James Keener, K. Kirkpatrick, Robert LeGrand, Ross Miller, Nevada Department of Corrections, Office of the Inspector General, Valaree Olivas, C. Ruiz, C. Rutherford, LCC AWO Sandy, C. Schardin, S. Sisco, State of Nevada, Adam Vallaster, Michael Ward, Lt. Whiteman, John Witting, and John Does.  (*Id.* at 5-13). Plaintiff alleges eleven counts and seeks declaratory relief, injunctive relief, and monetary damages. (*Id.* at 26, 32-36).

**A.    Counts I and II**

In Count I, Plaintiff alleges the following: On December 18, 2012, Inmate Bobadilla jumped Plaintiff without provocation while Plaintiff was eating in the LCC protective segregation dining hall. (ECF No. 1-1 at 14-15). Bobadilla repeatedly punched Plaintiff in the face and head. (*Id.* at 15).  Two days prior, Bobadilla had been in a physical fight with another inmate and had received numerous injuries. (*Id.*). Jenkins had encouraged Bobadilla to attack Plaintiff in retaliation for the previous grievances that Plaintiff had filed against her. (*Id.*).  Vallaster, whose post was close enough to stop the attack, had left his post and left Plaintiff defenseless as soon as the attack started. (*Id.*).  Whiting should have been at his post but was not there. (*Id.*).  There were several inmate witnesses to the attack. (*Id.* at 16). After the attack, prison officials put Plaintiff into solitary confinement, pending a hearing, where Plaintiff remains to this day. (*Id.*).

Between December 18, 2012 and December 20, 2012, Jenkins filed a report which falsely accused Plaintiff of starting the fight and stabbing Bobadilla with a pencil, which he did not do. (*Id.*).  Bobadilla's injuries had been from the fight he was in two days earlier. (*Id.*). On December 18, 2012, Bobadilla falsely accused Plaintiff of stabbing him with a pencil. (*Id.* at 16-17). Bobadilla had planted a pencil near the attack. (*Id.* at 17).  Ward destroyed the fingerprints and DNA evidence on the pencil when Ward fondled, twirled, and played with the pencil with his bare hands. (*Id.*). On December 20, 2012, Olivas filed a falsified notice of charges against Plaintiff without any meaningful investigation of the incident. (*Id.*).

Between December 18, 2012 and March 10, 2013, Keener, the investigator, suppressed or destroyed evidence by withholding photographs of Bobadilla's alleged injuries

4

from the December 16, 2012 fight and the December 18, 2012 attack, evidence of the December 16th fight between Bobadilla and another inmate, Bobadilla's medical records from both incidents, the alleged pencil used as a weapon, and exculpatory witness statements. (*Id.*). Jenkins, Olivas, and Keener set up the attack in retaliation for previous grievances that Plaintiff had filed. (*Id.*).

Plaintiff is confined to a cell for 23 hours a day in solitary confinement. (*Id.*). Plaintiff is permitted to exercise once every two or three days. (*Id.* at 17-18). Plaintiff has been deprived of his property; the ability to work; the ability to attend educational and vocational programs and religious services; and the ability to interact with other inmates. (*Id.* at 18). After Plaintiff completed his disciplinary sentence in September 2013, he requested a transfer back to LCC. (*Id.*). However, on April 3, 2014, LCC prison officials blocked the transfer. (*Id.*). ESP continued to hold Plaintiff in solitary confinement until shipping Plaintiff to HDSP. (*Id.*). Plaintiff is in solitary confinement at HDSP. (*Id.*). Plaintiff alleges an Eighth Amendment violation. (*Id.* at 15).

In Count II, Plaintiff alleges the following: Jenkins had filed a false report against Plaintiff through email after her shift had ended without her title, printed name, or signature on it in violation of an administrative regulation. (ECF No. 7-1 at 19). Olivas had filed a false notice of charges for assault and battery against Plaintiff less than 48 hours after the incident without conducting a meaningful investigation. (*Id.*). Keener did not test the pencil for DNA to prove Plaintiff's innocence and violated Plaintiff's rights by not adequately investigating the incident. (*Id.*). Gentry had violated Plaintiff's due process rights during the disciplinary hearing by convicting Plaintiff of those charges, putting Plaintiff in disciplinary segregation, and taking away Plaintiff's good time credits. (*Id.*). Gentry did not disclose photographs and medical records of Bobadilla's injuries, did not inform Plaintiff of Bobadilla's fight on December 16th, did not produce the alleged weapon, did not disclose Keener's investigation results, did not let Plaintiff call all of his witnesses, did not let Plaintiff confront Bobadilla, and did not permit Plaintiff to confront Olivas. (*Id.* at 20). Instead of permitting Plaintiff to question his witnesses, Gentry questioned the witnesses over the phone. (*Id.*). Le Grand later overturned that

5

conviction. (*Id.* at 19).

On March 10, 2013, Plaintiff had a second disciplinary hearing with Carpenter. (*Id.* at 20). Plaintiff was not given adequate notice of the hearing before the hearing. (*Id.*). Carpenter violated Plaintiff's due process rights by not disclosing photographs and medical records of Bobadilla's injuries, not informing Plaintiff of Bobadilla's fight on December 16th, not producing the alleged weapon, and not disclosing Keener's investigation results. (*Id.*). Carpenter also relied on evidence not in the written disposition. (*Id.*). Plaintiff was not permitted to fully defend himself because he could not call all of his witnesses, was not permitted to confront Bobadilla, was not permitted to question Olivas, and was not to permitted to have his inmate witnesses present or directly question them in person. (*Id.* at 20-21). Plaintiff alleges a due process violation. (*Id.* at 19).

The Court interprets Counts I and II as claims for due process violations. In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). In *Sandin*, the Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. In *Sandin*, the Supreme Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Id*. at 486-87.

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate

6

is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

"When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992). An inmate's right to present witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Jail officials "must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071, 1079 (9th Cir. 2003). Despite this, an inmate has no right to cross-examine or confront witnesses in prison disciplinary hearings. *See Wolff*, 418 U.S. at 567-68.

The Court finds that Plaintiff fails to state a due process claim. Plaintiff does not have the right to cross-examine or confront witnesses in a prison disciplinary hearing. Additionally, Plaintiff does not have the right to look at another inmate's confidential medical file. Also, prison officials did permit Plaintiff to call witnesses–just not all of them. As such, Court dismisses Plaintiff's due process claim with prejudice, as amendment would be futile.

**B.     Count III**

In Count III, Plaintiff alleges the following: On December 24, 2012, Gentry violated Plaintiff's Sixth Amendment right to counsel. (ECF No. 7-1 at 21). According to Plaintiff, Nevada law requires that Plaintiff have counsel at any disciplinary hearing where the charge would constitute a felony in criminal court. (*Id.*). Gentry did not inform Plaintiff of his right to counsel and did not ask Plaintiff if he wanted an attorney. (*Id.*). On March 10, 2013, Carpenter did not inform Plaintiff of his right to counsel and did not ask Plaintiff if he wanted an attorney. (*Id.* at 22).

The Court dismisses this claim. The Sixth Amendment applies to criminal prosecutions. U.S. Const., amend. VI. A prison disciplinary hearing is not a criminal prosecution. The Supreme Court has held that prisoners have no automatic right to counsel in prison disciplinary hearings, but if the inmate is illiterate or the issues are complex, the prisoner must

7

be provided with some legal assistance. *See Vitek v. Jones*, 445 U.S. 480, 495-96 (1980). As such, the Court dismisses this claim with prejudice, as amendment would be futile. To the extent that Plaintiff is attempting to allege a state law claim, Plaintiff should file that claim in state court. *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) (holding that 42 U.S.C. § 1983 does not provide a cause of action for violations of state law).

**C.    Count IV**

In Count IV, Plaintiff alleges the following: On December 25, 2012, Plaintiff submitted a book approval request form to order and receive the Prisoners' Self Help Litigation Manual. (ECF No. 7-1 at 22). Prison officials did not return this request with an approval until February 12, 2013. (*Id.*). This extreme delay was in retaliation for Plaintiff filing complaints against known and unknown defendants during and after December 18, 2012, to prevent Plaintiff from petitioning the government for redress with the assistance of the self-help manual. (*Id.*). Before December 18, 2012, any and all book request approvals had been returned to Plaintiff in less than 14 days. (*Id.*).

Up until December 30, 2012, Plaintiff had sent and received mail from his wife without any delays for two years while at LCC. (*Id.* at 23). However, starting on December 30, 2012, unknown LCC mail room staff began interfering with Plaintiff's mail. (*Id.*). This continued until Plaintiff transferred to ESP on April 5, 2013. (*Id.*). Plaintiff alleges that the book delay and mail interference were retaliatory. (*Id.*).

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68.

The Court dismisses this claim with prejudice. Plaintiff has only provided conclusory allegations to this claim. Plaintiff has not provided any factual allegations that the library staff or mail room officers knew that Plaintiff had filed any grievances or had engaged in any other type of protected conduct and that the delays were in response to those activities. Additionally, Plaintiff has not alleged how a delay in receiving his book request or letters from his wife chilled his First Amendment rights. Moreover, Plaintiff would not have been able to file a civil rights lawsuit until after he exhausted his claims which would have taken longer than the 14 days that Plaintiff usually received approvals.

### D.     Count V

In Count V, Plaintiff alleges the following: On December 18, 2012, Spencer searched, inventoried, and secured Plaintiff's property in order to send Plaintiff to solitary confinement. (ECF No. 7-1 at 23). On December 19, 2012, Cartier went through Plaintiff's legal work, read it, and seized an unknown number of legal documents including documents which contained proof of prior bad acts by Jenkins. (*Id.* at 23-24). Prison officials have not returned those documents. (*Id.* at 24). Plaintiff alleges a Fourth Amendment violation. (*Id.* at 23).

The Court interprets this as a due process claim. While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

Plaintiff fails to state a due process claim. Based on the allegations, Cartier engaged in an intentional, unauthorized deprivation of property when he specifically went through Plaintiff's secured items and removed legal documents. The State of Nevada provides Plaintiff

with a meaningful post-deprivation remedy for this type of loss. *See* Nev. Rev. Stat. § 41.0322 (setting forth guidelines for actions by persons in custody of the NDOC to recover compensation for loss or injury). As such, the Court dismisses this claim with prejudice, as amendment would be futile.

### E.   Count VI

In Count VI, Plaintiff alleges that he was treated "differently than similarly situated inmates during the disciplinary process and ensuing solitary confinement" and alleges an equal protection violation. (ECF No. 7-1 at 24). The Court dismisses this claim with prejudice. There are no allegations in the complaint to support the claim that prison officials treated Plaintiff differently than other similarly situated inmates.

### F.   Count VII

In Count VII, Plaintiff alleges that he was denied his right to have a polygraphic examination under state law. (ECF No. 7-1 at 24). The Court dismisses this claim and directs Plaintiff to file this claim in state court. *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) (holding that 42 U.S.C. § 1983 does not provide a cause of action for violations of state law).

### G.   Count VIII

In Count VIII, Plaintiff alleges that he had filed grievances against Feil in the mailroom but LCC staff persuaded Plaintiff to drop those complaints. (ECF No. 7-1 at 25). In 2009, Plaintiff filed a grievance against Jenkins for unlawful seizure of property. (*Id.*). This was one of the grievances that Cartier had seized from Plaintiff on December 19, 2012. (*Id.*). Feil, Jenkins, and Olivas are all friends. (*Id.*). Olivas harassed and intimidated Plaintiff since 2009 in retaliation for his complaints against Feil and then falsely charged Plaintiff for assault and battery. (*Id.*). Keener, Gentry, Carpenter, and LeGrand retaliated against Plaintiff by suppressing and ignoring evidence of Plaintiff's innocence. (*Id.*). Plaintiff alleges retaliation. (*Id.*).

The Court dismisses this claim with prejudice. Plaintiff has not provided any allegations that establishes a causal connection between a grievance he filed in 2009 against Jenkins and

Olivas's alleged actions in 2012. Additionally, Plaintiff only provides conclusory allegations.

### H. Count IX

In Count IX, Plaintiff alleges conspiracy but does not provide any factual allegations. (ECF No. 7-1 at 26). "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). The plaintiff must show "an agreement or meeting of the minds to violate constitutional rights," and "[t]o be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). The Court dismisses this claim with prejudice. Plaintiff only provides conclusory allegations that defendants in general conspired to violate his rights.

### I. Counts X and XI

In Count X, Plaintiff alleges intentional infliction of emotional distress. (ECF No. 7-1 at 26). In Count XI, Plaintiff alleges a state tort of assault and battery. (*Id.* at 26-27). The Court dismisses these state law claims and directs Plaintiff to file these claims in state court. *See Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) (holding that 42 U.S.C. § 1983 does not provide a cause of action for violations of state law).

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion requesting leave to file a new application to proceed *in forma pauperis* (ECF No. 4) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 5) without having to prepay the full filing fee is GRANTED. Plaintiff shall **not** be required to pay an initial installment fee. Nevertheless, the full filing fee shall still be due, pursuant to 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform Act. The movant herein is permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security therefor. This order granting *in forma pauperis* status shall not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform Act, the Nevada Department of Corrections shall pay to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the account of **Jeremy Joseph Strohmeyer, #59389** (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action. The Clerk shall send a copy of this order to the attention of **Albert G. Peralta, Chief of Inmate Services for the Nevada Department of Prisons,** P.O. Box 7011, Carson City, NV 89702.

**IT IS FURTHER ORDERED** that, even if this action is dismissed, or is otherwise unsuccessful, the full filing fee shall still be due, pursuant to 28 U.S.C. §1915, as amended by the Prisoner Litigation Reform Act.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file an amended complaint (ECF No. 7) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file the amended complaint (ECF No. 7-1).

**IT IS FURTHER ORDERED** that the amended complaint is dismissed in its entirety, with prejudice, as amendment would be futile.

**IT IS FURTHER ORDERED** that this Court certifies that any *in forma pauperis* appeal from this order would be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 7th day of May, 2015.

_____
United States District Judge