UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| JEREMY STROHMEYER, | ) | 3:14-cv-00661-RCJ-WGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | Re: Plaintiff's Motion to Compel |
| K. BELANGER, *et al.*, | ) | (ECF Nos. 147, 149, 150 & 175) |
| Defendants. | ) | |

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC) and Ely State Prison (ESP). Plaintiff filed an original complaint on December 18, 2014, and then sought leave to file an amended complaint. (ECF Nos. 1-1, 7.) District Judge Robert C. Jones granted the motion and screened the amended complaint, dismissing it in its entirety with prejudice. (ECF No. 8.) Plaintiff appealed. (ECF No. 11.)

On August 5, 2016, the Ninth Circuit Court of Appeals issued its memorandum decision affirming in part, reversing in part, vacating in part, and remanding Judge Jones' disposition on the amended complaint. (ECF No. 15.) District Judge Jones then gave Plaintiff 30 days to file a second amended complaint (SAC). (ECF No. 19.) He was provided several extensions of time to file the SAC. He filed the SAC on February 6, 2017. (ECF No. 33.) On March 27, 2018, District Judge Jones issued an order screening the SAC, permitting some claims to proceed and dismissing others with and without

leave to amend. (ECF No. 44.) The case was then stayed while the parties participated in an early mediation conference, which was ultimately unsuccessful. (ECF Nos. 44, 48.)

On January 28, 2019, Plaintiff filed a motion for leave to file a third amended complaint (TAC). (ECF No. 110.) On February 15, 2019, the undersigned granted Plaintiff's motion and stayed the discovery and dispositive motion deadlines. (ECF No. 119.) The TAC is docketed at ECF No. 120. The court then screened the TAC under 28 U.S.C. § 1915A on July 2, 2019 (ECF No. 153), and allowed certain claims to proceed as follows:

(a) Count I - Eighth Amendment failure to protect claim against Jenkins, Vallaster, Whiting, Olivas and Keener;

(b) Count II - due process claims against Jenkins, Ward, Olivas, Keener, LeGrand, Kirkpatrick, Carpenter, and the unidentified investigator from the Inspector General's Office (who must be substituted within the parameters of the operative scheduling order and Federal Rules of Civil Procedure);

(c) Count III - retaliation claim against Jenkins, Belanger, Miranda, Olivas, Bequette (assuming this is an actual person and not just a pseudonym used by another defendant), and the unidentified mailroom officer(s) (who must be substituted within the parameters of the operative scheduling order and Federal Rules of Civil Procedure);

(d) Count IV - First Amendment mail tampering claim against Jenkins and Bequette. Plaintiff was also allowed to proceed against the unidentified mailroom officer(s) when he learns their identities (*See*, ECF No. 186), who must be substituted within the parameters of the operative scheduling order and Federal Rules of Civil Procedure;

(e) Count V - a "class of one" equal protection claim against Jenkins, Keener, Ward, Carpenter, Olivas and LeGrand;

(f) Count VI - a conspiracy claim against Jenkins, Vallaster, Whiting, Olivas, Keener, Carpenter, Ward, LeGrand, Belanger, Miranda, and Bequette;

(g) Count VIII - a retaliation claim against Olivas and Deal;

|    |     |     |                                                                                              |
|----|-----|-----|----------------------------------------------------------------------------------------------|
| 1  |     | (h) | Count IX - a due process claim against Olivas and Deal;                                      |
| 2  |     | (I) | Count X - a conspiracy to retaliate claim against Olivas and Deal;                           |
| 3  |     | (j) | Count XIV - an intentional infliction of emotional distress claim against Jenkins, Vallaster, Whiting, Olivas, Keener, Ward, LeGrand, Kirkpatrick; Carpenter; Belanger; Miranda, Olivas, Bequette, and Deal; |
| 6  |     | (k) | Count XV - the assault and batter tort claims against Bobadilla                              |

(2) The court stated that the TAC would not proceed on the following claims or as to the following parties which were already dismissed with prejudice from this action:

      (a)    Count VII - the due process claim based on the failure to transfer Plaintiff back to LCC;

      (b)    Count XI - the claim for right to counsel in the disciplinary hearing;

      (c)    Count XII - the deprivation of property claim;

      (d)    Count XIII - the claim that his requests for a polygraph examination were denied under State law;

      (e)    NDOC or its Inspector General's Office.

On July 18, 2019, Plaintiff filed a motion to correct what he perceived as mistakes in the court's July 2, 2019 Screening Order (ECF No. 163).[1] In ECF No. 163, the court granted Plaintiff's request that the court correct these mistakes or misinterpretations the court made as to Plaintiff's 68-page handwritten Third Amended Complaint. With the possible exception of the court's analysis of Plaintiff's Count XII, none of the corrections or revisions the court subsequently approved were substantive and will not have a significant bearing on the court's resolution of Plaintiff's motion to compel.[2]

## II. PLAINTIFF'S MOTION TO COMPEL

Before the court is Plaintiff's motion to compel (ECF No. 147). Plaintiff's discovery motion pertained to Plaintiff's 40 Requests for Production which were served as to Defendant Olivas who

---

[1] Defendants did not file a response.

[2] The Defendants named in Count XII are Cartier, Belanger, LeGrand, Schardin and Gilder. Plaintiff's motion to compel (ECF No. 147) only pertains to Defendant Olivas.

objected in one fashion or another to all Plaintiff's requests. (*Id.* at 87-126.) Plaintiff argues Defendant should be compelled to provide further responses to the discovery requests.

Upon the filing of the motion, Defendants requested the court stay the deadline to respond to Plaintiff's 51 page Motion to Compel (ECF No. 147):

> "* * * because Defendants believe that a conference with the Court regarding the issues raised in the Motion to Compel could assist in narrowing the discovery issues between the parties, and help control the excessive amount of filings in this case. . . . Plaintiff's discovery requests seek personal information from Defendants that Defendants believe is beyond the permissible scope of discovery, particularly when considering the nature of this case. For example, Plaintiff is seeking, among other things, Defendants' tax returns, cell phone contracts, cell phone application information, and GPS tracking data. Accordingly, Defendants respectfully request that the deadline to oppose Plaintiff's motion be stayed until a conference can be held to address the numerous and lengthy discovery requests that have already been propounded in this case."

(ECF No. 149 at 2.)

Defendants also filed a motion requesting the court conduct a hearing on Plaintiff's motion to compel before requiring Defendants to respond, if at all. (ECF No. 148.) The Defendants argued that the discovery Plaintiff was seeking in his motion to compel "is beyond the scope of discovery . . . ." The Defendants therefore requested that an initial hearing be held on Plaintiff's motion "to help define the scope of permissible discovery in this matter." (*Id.* at 2.)

The court granted Defendants' motion, stating that under the circumstances surrounding Plaintiff's motion to compel, it "appear[ed] appropriate that the court have a conference to discuss Plaintiff's discovery prior to requiring Defendant Olivas to respond." Defendants' motion to stay was granted and the court directed the Courtroom Administrator to schedule a discovery conference on Plaintiff's motion. (ECF No. 148.)

On August 12, 2019, Plaintiff filed a motion to submit additional exhibits that he claimed pertained to his motion to compel (ECF No. 175). Plaintiff's motion submitted some additional 62 pages of exhibits in supplement to his underlying 74-page motion to compel and approximately 50 pages of exhibits which accompanied his original motion.[3]

---

[3]The court albeit reluctantly granted Plaintiff's motion to submit pages in excess of the limits allowed by LR IA 10-3. (ECF No. 146.)

On August 27, 2019, the court conducted a discovery conference on Plaintiff's motion to compel at which time the court heard argument on whether Plaintiff's 40 requests for production sought legitimately discoverable information under Fed. R. Civ. P. 26(b). *See* ECF No. \_\_\_\_ (Minutes of Proceedings, 8/27/2019). The court now formally rules on the viability of Plaintiff's Requests for Production to Defendant Olivas.

### III. LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) defines the scope of permissible discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*See* Fed. R. Civ. P. 26(b)(1) (emphasis added). Thus, to be discoverable under Fed. R. Civ. P. 26(b)(1), the information sought must be (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case."

**A.  Relevancy**

Under the first prong of this test, for information to be discoverable, it must be "relevant to any party's claim or defense." *Id.* The term "relevant" is not defined in the Rules, but relevance is generally construed broadly. However, to be relevant, the discovery has to pertain to a claim, issue or defense that is pleaded in the case. *Amgen, Inc. v. Hospira, Inc.*, 866 F.3d 1355, 1361 (Fed. Cir. 2017).

**B.  Proportionality**

Under the second part of the Fed. R. Civ. P. 26(b)(1) test, to be discoverable, information must be "proportional to the needs of the case." The 2015 amendments added the proportionality requirement for permissible discovery—relevancy alone is no longer sufficient. As the Rule states, when determining whether discovery is "proportional to the needs of the case," the Court must examine the information requested in light of six factors: "[1] the importance of the issues at stake in action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Fed. R. Civ. P. 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C) further restricts discovery. It requires the Court to limit the frequency or extent of discovery if the Court determines that the discovery sought is (1) "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or and to less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" and (3), as particularly pertinent to the discovery requests propounded by Plaintiff, "the proposed discovery is outside the scope of Rule 26(b)(1)." *See* Fed. R. Civ. P. 26(b)(2)(C). In deciding whether to restrict discovery under Fed. R. Civ. P. 26(b)(2)(C), the Court "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *See Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 602 (D. Nev. 2016) (quoting *Smith v. Steinkamp*, 2002 WL 1364161, at *6 (S.D. Ind. May 22, 2002)).

Magistrate Judge Peggy Leen, who authored the *Roberts* decision, provided an excellent overview of the genesis of the amendments to Rule 26, which are worthy of review at this point in this court's analysis of Plaintiff's motion to compel:

> Since the late 1970s, the Supreme Court and the Advisory Committee on the Civil Rules have encouraged trial courts to exercise their broad discretion to limit and tailor discovery to avoid abuse and overuse. The trial courts have been urged to actively manage discovery to accomplish the goal of Rule 1 of the Federal Rules of Civil Procedure—"to secure the just, speedy, and inexpensive determination of every action and proceeding."
>
> In 1983, Rule 26 was amended to add subsection (g), which provides that a lawyer filing a discovery request, response or objection certifies by signing the document that it is "not interposed for any improper purpose, *such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation*."
>
> * * *
>
> Rule 26(g) was added to address the reluctance of judges to impose sanctions on attorneys who abuse the discovery rules. See Brasil, Civil Discovery: Lawyers' Views of its Effectiveness, Principal Problems and Abuses, American Bar Foundation (1980). As one well-respected treatise observed, "Rule 26(b) was amended in 1983 to promote judicial limitation of the amount of discovery on a case-by-case basis *to avoid abuse or overuse of discovery through the concept of proportionality*." 8 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2008.1 (3d ed. 2015). The Advisory Committee notes reported that

6

"Ruled 26(g) makes explicit the authority judges now have to impose appropriate sanctions and requires them to use it. This authority derives from Rule 37, 28 U.S.C. § 1927, and the court's inherent power." (citation omitted.)

In 1998, the Supreme Court wrote that "Rule 26 vests the trial judge with broad discretion *to tailor discovery narrowly* and to dictate the sequence of discovery." Crawford–El v. Britton, 523 U.S. 574, 599, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). The Supreme Court recognized that under Rule 26(b)(2), the trial court may, on its own motion, limit the frequency or extent of use of discovery methods *if it determines the burden or expense of proposed discovery outweighs its likely benefits. Id*. Rule 26(c) gives the trial court authority on motion, or on its own initiative, to limit the time, place, and manner of discovery, or bar discovery altogether on certain subjects, as required "*to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.*" *Id*. Similarly, under Rule 26(d), the court may set the timing and sequence of discovery. *Id.* The Crawford–El decision emphasized that the trial court has broad discretion under Rule 26 in managing discovery "to facilitate prompt and efficient resolution of the lawsuit." *Id*.

In 2000, Rule 26 was again amended to call attention to the limitations of Rule 26(b)(2)(C). The Advisory Committee Notes indicate that the Advisory Committee was repeatedly told "that courts have not implemented these limitations with the vigor that was contemplated." 192 F.R.D. 340, 390 (2000). Thus, Rule 26 was amended to add an "otherwise redundant cross-reference ... to emphasize the need *for active judicial use of subdivision (b)(2) to control excessive discovery*." *Id.* (citing Crawford–El, 523 U.S. at 598, 118 S.Ct. 1584).

Recently, Chief Justice John Roberts issued his Year-End Report on the Federal Judiciary in which he addressed the 2015 amendments to the Federal Rules of Civil Procedure at length.1 The Chief Justice traced the "elaborate and time-consuming" procedure for promulgating and amending the rules which began in 2010 when the Advisory Committee on the Civil Rules sponsored a symposium on civil litigation attended by federal and state judges, law professors, plaintiff and defense lawyers, and representatives from business, government, and public interest organizations. The symposium identified the need for procedural reforms to: (1) encourage greater cooperation; (2) *focus discovery on what is truly needed to resolve cases*; (3) engage judges in early and active case management; and (4) address serious problems associated with vast amounts of electronically stored information. *Id.* at 4–5.

\* \* \*

The 2015 amendments to Rule 26(b)(1) emphasize the need to impose "reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id*. The fundamental principle of amended Rule 26(b)(1) is "that lawyers *must size and shape their discovery requests to the requisites of a case*." *Id*. at 7. The pretrial process must provide parties with efficient access to what is needed to prove a claim or defense, *but eliminate unnecessary or wasteful discovery. This requires active involvement of federal judges to make decisions regarding the scope of discovery.*

7

*Roberts*, 312 FRD at 602-604; emphasis in italics added.

As Judge Leen further discussed in the *Roberts* decision, Fed. R. Civ. P. 26 gives the Court broad discretion to "tailor discovery narrowly and to dictate the sequence of discovery" and emphasized that the trial court has broad discretion under Rule 26 in managing discovery in order "to facilitate prompt and efficient resolution of the lawsuit." *See Crawford-El v. Britton*, 523 U.S. 574, 599 (1998).

In addition, Rule 26(b)(2)(C)(iii) now requires that the court, either on a motion of party, or on its own, "must limit the frequency or extent of discovery otherwise allowed" by the Federal Rules if such discovery is outside the scope of that permitted by Rule 26(b)(1) - *i.e.*, not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(C)(iii). The Advisory Committee Notes state that this amendment was included to reflect both the transfer of the proportionality factors to the scope of discovery and to indicate "that the court must still limit the frequency or extent of discovery if it is not proportional to the needs of the case." Courts, thus, have a "duty to pare down overbroad discovery requests under Rule 26(b)(2)." *See Rowlin v. Alabama Dep't. of Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001).

## IV. <u>DISCUSSION</u>

Plaintiff's Request for Production could be considered "Exhibit A" as precisely the kind of disproportionate and irrelevant discovery that Rule 26 is intended to preclude. A few examples of Plaintiff's requests demonstrate the "fishing expedition" nature of Plaintiff's discovery that despite Plaintiff's lengthy protestations to the contrary (ECF Nos. 147 & 175):

**REQUEST NO. 1:**

Your Facebook Social Graph, showing your list of friends and how they are connected, from December 1, 2012, until now.

**REQUEST NO. 2:**

Your Facebook messages, timelines, and friends list from December 1, 2012, until now.

**REQUEST NO. 7:**

All work and personal emails between you and the other defendants between January 2005, and today.

**REQUEST NO. 10:**

Your educational transcripts.

**REQUEST NO. 12:**

All your time cards, work logs, and NEATS sheets from January 2005 until the end of your employment with NDOC.

**REQUEST NO. 14:**

A list of all people with information about the claims against you.

**REQUEST NO. 16:**

A list of all sources of discoverable information.

**REQUEST NO. 18:**

All documents prepared for litigation in other cases against you.

**REQUEST NO. 22:**

All phone records of all work and personal calls between you and the other defendants, from 1/1/12 to now (including landlines, cellphones, VOIP, or voice communication apps); including, but not limited to, numbers called, numbers from which calls were received, call durations, dates of calls, and times of calls.

**REQUEST NO. 23:**

Your NDOC computer access log from 1/1/12 to the end of your employment with NDOC.

**REQUEST NO. 25:**

All instant messages (IM's) and text messages between you and the other defendants from 1/1/112 until now.

**REQUEST NO. 29:**

Your union contract in effect in December of 2012.

**REQUEST NO. 30:**

A list of all the apps on your smartphone.

///

///

Plaintiff also filed a motion "to submit exhibits for 8/14/19 hearing" (ECF No. 175). The court granted Plaintiff's motion at the court's discovery hearing (which had been moved from 8/14/19 to 8/27/19) (ECF No. 195).

In section I of Plaintiff' s motion, Plaintiff asks the court to take judicial notice of several NDOC regulations ("Administrative Regulations" - "AR's"), identifying "all of the AR series dealing with NDOC employees" (but without identifying which specific AR's are in the 300 series Plaintiff was referring to) and seven other AR's. Although the court visited the NDOC website and reviewed these AR's, without a specific discussion of how the cited AR's pertain to either Plaintiff's causes of action, or more specifically, Plaintiff's discovery to Defendant Olivas, the court fails to see how any of these AR's support Plaintiff's discovery motion.

In section II of Plaintiff's motion, Plaintiff refers to seven exhibits (A-G) which Plaintiff represented "directly bear on the issues to be raised and discussed at the hearing." (ECF No. 175 at 2-3.) However, the court fails to understand how or why these exhibits support Plaintiff's motion to compel.

The Plaintiff's requests for production almost entirely fail to focus on discovery which is truly needed to prosecute Plaintiff's multiple claims for relief. The discovery is not "tailored narrowly" to seek facts relevant to Plaintiff's claims for relief and the requests are not "shaped" to the "requisites of [plaintiff's] case."  It is readily apparent Plaintiff's discovery is excessive, unnecessary, wasteful and burdensome, not only on the Defendant but upon the court.

The court notes, however, that as to certain requests, Defendant has stated she has no documents responsive to certain requests. (*See*, numbers 4, 7, 8, 14 & 25).  As to numerous others, she has stated that because she is no longer employed by the Nevada Department of Corrections, she no longer has access to the documents or information Plaintiff seeks, if even still maintained by NDOC. (*See*, numbers 7, 11, 12, 19, 20, 21, 23, 27, 28, 31, 33, 34, 35, 36, 38, 39 & 40.) To the extent Plaintiff's requests even constitute legitimate discovery, the court will not require the Defendant to attempt to access materials, documents or files over which she neither control nor access.

The court recognizes an inmate Plaintiff is at a disadvantage in conducting discovery. However, the United States Supreme Court has generally stated that although Congress provided relief for violation of one's civil rights under 42 U.S.C. § 1983, the right to access to the courts is only a right to bring

complaints to federal court and not a right to discover such claims or even to litigate them effectively once filed with a court. *Lewis v. Casey*, 518 U.S. 343, 354-355 (1996). But even with those constraints, pro se plaintiffs, including pro se inmate plaintiffs, are obligated to comply with the Federal Rules of Civil Procedure.

At the court's August 27, 2019 hearing, the court learned the Plaintiff served excessive discovery requests totaling *135* requests to Defendant Belanger. The court ordered these requests to Defendant Belanger are deemed void, as is any other discovery propounded by Plaintiff which has not already been responded to by Defendants. Plaintiff is directed to "start over" with discovery which is tailored specifically to the requisites of the case. However, barring a showing a good cause, and in view of the multiple causes of action involving some 20 defendants in this action, Plaintiff will be limited to sending only ten (10) interrogatories, ten (10) requests for production and/or ten (10) requests for admissions per Defendant.

In exercising this court's discretion with regard to Plaintiff's motion to compel, the court **DENIES** Plaintiff's motion.

**IT IS SO ORDERED.**

DATED: August 28, 2019.

_____
UNITED STATES MAGISTRATE JUDGE